UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) 00CR1065 JUDGE LEFKOW
)
v. ) No. 00 CR 1065 MAGISTRATE JUDGE BROWN
)
PETER BOUZANIS and ) Violations: Title 18, United
NICHOLAS BLACK ) States Code, Sections 2, 371,
) 1001, 1341, 1343
)
) **SUPERSEDING INDICTMENT**

DOCKETED JUL 1 3 2001

FILED
APR 1 7 2001
APR 17 2001
MAGISTRATE JUDGE IAN H. LEVIN
UNITED STATES DISTRICT COURT

**COUNT ONE**

The SPECIAL JULY 2000-2 GRAND JURY charges:

1. At times material to this indictment:

a. The United States Small Business Administration (hereinafter "SBA") was an agency within the executive branch of the United States Government. If a loan made by a participating independent lender to a business met certain requirements, the SBA would guarantee a percentage of that loan against default by the borrower.

b. The Money Store Investment Corporation (hereinafter "The Money Store") was an independent lender that made loans guaranteed by the SBA.

c. With regard to loans guaranteed by the SBA, the SBA authorized The Money Store to take such actions that were necessary to protect and to preserve the interests of both The Money Store and the SBA.

10

d. Before a borrower could obtain a loan guaranteed by the SBA, the borrower had to complete certain forms, including an "Application for Business Loan" (SBA Form 4) and a "Statement of Personal History," (SBA Form 912). On the "Statement of Personal History," the borrower had to confirm certain information regarding the borrower's background, including the borrower's citizenship status and criminal history.

**DEFENDANTS AND RELEVANT PARTIES AND ENTITIES**

e. The Waterfalls Restaurant was a restaurant and bar located at 24436 West State Route 173 in Antioch, Illinois.

f. The corporation referred to in this indictment as "Corporation A" owned The Waterfalls Restaurant until it sold the restaurant to defendant PETER BOUZANIS on or about April 24, 1996.

g. The individuals referred to in this indictment as "Individual A" and "Individual B" were shareholders of Corporation A.

h. Defendant NICHOLAS BLACK was an attorney licensed to practice law in the State of Illinois. BLACK represented Corporation A and its shareholders as their real estate attorney.

i. The individual referred to in this indictment as "Individual C" was the brother of "Individual A."

j. The individual referred to in this indictment as "Individual D" was the brother-in-law of "Individual A" and "Individual C."

**AGREEMENT TO SELL THE WATERFALLS RESTAURANT**

2. In or around November 1995, Corporation A agreed to sell The Waterfalls Restaurant and its assets to defendant PETER BOUZANIS. The purchase price agreed upon at that time was $1,595,000 for the real estate and $5,000 for the assets, for a total price of approximately $1,600,000.

3. In or around December 1995, BOUZANIS inquired about obtaining a SBA-guaranteed loan from The Money Store to finance the transaction.

4. The loan amount ultimately sought by defendant PETER BOUZANIS was $1,250,000, which was approximately 80 percent of the purchase price initially agreed to by the parties.

5. On or about March 5, 1996, The Money Store informed the parties that the amount of the loan as compared to the value of the property (also known as the "loan-to-value ratio") had to be decreased to 70 percent.

6. On or about March 14, 1996, the Money Store informed defendant PETER BOUZANIS that he was required to provide his own capital contribution in unencumbered funds of $398,938 at the time of closing, which included a $325,000 downpayment, $45,000 of "working capital," and a $25,938 fee charged by the SBA.

7. Defendant PETER BOUZANIS did not have the personal funds available to comply with the requirement for a lower loan-to-value ratio, or to make the capital contribution required to close the transaction.

**THE MANNER AND MEANS OF THE CONSPIRACY**

8. Beginning no later than in or around early March 1996, and continuing until at least in or around late April 1996, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS BLACK and
PETER BOUZANIS,

defendants herein, did conspire with each other, and with others known and unknown to the Grand Jury, to defraud an agency of the United States, namely, the SBA, and to commit offenses against the United States, namely:

a. to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and omissions, and to cause matter to be deposited for delivery and delivered by a commercial interstate carrier, according to the directions thereon, for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1341; and

b. to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises and omissions, and to cause to be transmitted in interstate commerce by means of wire and radio communications, certain writings, signs, signals, pictures and sounds, for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

9. It was the conspiracy of defendants PETER BOUZANIS, NICHOLAS BLACK and others to engage in a scheme to defraud The

Money Store and the SBA by making material misstatements and omissions and creating materially false pretenses in order to obtain and to keep the $1,250,000 in funding from The Money Store, and to complete the sale of The Waterfalls Restaurant to defendant PETER BOUZANIS. More specifically, defendants and others created the materially false pretense that the loan conditions required by The Money Store had been satisfied, and in so doing fraudulently induced The Money Store to lend $1,250,000 to defendant PETER BOUZANIS, and the SBA to guaranty 60 percent of that loan.

10. It was part of the conspiracy that, on or about March 8, 1996, the co-conspirators and others created the false pretense that The Money Store's requirement of a 70 percent loan-to-value ratio had been satisfied. The co-conspirators created this false pretense by artificially inflating the purchase price for the real estate to $1,785,000, and accounting for the increase in price by extending a $215,000 second mortgage to BOUZANIS that the co-conspirators never intended to enforce.

11. It was further part of the conspiracy that, on or about April 24, 1996, the co-conspirators and others created the false pretense that defendant PETER BOUZANIS possessed sufficient personal funds to pay for his downpayment and closing costs. The co-conspirators created this false pretense by arranging for a third party to pledge his own money as collateral for a five-day bank loan to defendant PETER BOUZANIS in the amount of $357,600. BOUZANIS then used the proceeds from this five-day bank loan to pay for his downpayment and other costs at closing, even though

BOUZANIS had falsely represented to The Money Store that the source of the funds he would use for these costs was an inheritance that he had received from his deceased father. After the closing, the co-conspirators returned $392,500 of the sale proceeds to defendant PETER BOUZANIS so that he could repay the five-day bank loan.

12. It was further part of the conspiracy that, on or about April 24, 1996, the co-conspirators and others created the false pretense that defendant PETER BOUZANIS possessed $45,000 of unencumbered working capital. The co-conspirators created this false pretense by means of a $45,000 loan from the sellers to BOUZANIS through the same third party that provided the collateral for the five-day bank loan. After the closing, BOUZANIS used $25,000 of the $392,500 in sale proceeds that had been returned to him to repay a portion of the $45,000 loan.

13. It was further part of the conspiracy that, in order to conceal the return of $392,500 in sale proceeds to defendant PETER BOUZANIS, and in order to conceal the sham nature of the $215,000 second mortgage, the co-conspirators concocted a fictitious purchase price dispute based on the physical and financial condition of The Waterfalls Restaurant. As a "settlement" of that fictitious dispute, the sellers purported to agree to pay BOUZANIS $392,500 and to forgive the $215,000 second mortgage.

14. It was further part of the conspiracy that defendants would and did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the acts and the purposes of the acts done in furtherance of the conspiracy.

## OVERT ACTS

15. In furtherance of the conspiracy and to effect the unlawful objects of the conspiracy, defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

a. On or about April 23, 1996, Individual C purchased a $45,000 cashier's check from Amalgamated Bank in Chicago, Illinois, and gave that check to his brother-in-law, Individual D.

b. On or about April 23, 1996, defendant PETER BOUZANIS opened an account at State Bank of the Lakes in Antioch, Illinois, and deposited a $45,000 personal check drawn on an account in the name of Individual D at Broadway Bank in Chicago, Illinois.

c. On or about April 24, 1996, defendant PETER BOUZANIS obtained a five-day, interest-free loan from Broadway Bank in Chicago, Illinois. Individual A asked his brother-in-law, Individual D, to pledge Individual D's own accounts at the bank as collateral. BOUZANIS received the proceeds of the loan in the form of a $354,000 cashier's check made payable to "Mercury Title Company."

d. On or about April 24, 1996, defendant PETER BOUZANIS, defendant NICHOLAS BLACK, Individual A, Individual B and others attended the real estate closing for The Waterfalls Restaurant. While at the closing, BOUZANIS presented the $354,000 cashier's check as payment for his downpayment and other costs.

e. On or about April 24, 1996, defendants PETER BOUZANIS, NICHOLAS BLACK and others caused a wire transfer in the amount of $1,250,000 into an account in the name of Mercury Title Company at American National Bank and Trust Company in Chicago, Illinois, which wire transfer was the disbursement of the loan proceeds from The Money Store to BOUZANIS.

f. On or about April 24, 1996, Corporation A received the net proceeds from the sale of The Waterfalls Restaurant in the form of a check from Mercury Title Company in the amount of $1,001,088.72.

g. On or about April 24, 1996, defendants PETER BOUZANIS, NICHOLAS BLACK and others caused Mercury Title Company to mail a package of documents to Chicago Title Company in Waukegan, Illinois, which package contained, among other things, the special warranty deed and the mortgage for The Waterfalls Restaurant.

h. On or about April 24, 1996, defendant NICHOLAS BLACK wrote a check drawn upon the seller's account at State Bank of the Lakes in Antioch, Illinois, which check was signed by Individual B and made payable to defendant PETER BOUZANIS in the amount of $392,500. BLACK postdated the check until April 27, 1996, to ensure that the check would not be deposited before State Bank of the Lakes credited the sale proceeds to the seller's account.

i. On or about April 25, 1996, Corporation A deposited the $1,001,088.72 check from Mercury Title Company into the same account at State Bank of the Lakes from which the $392,500 check payable to defendant PETER BOUZANIS was drawn.

j. On or about April 29, 1996, defendant PETER BOUZANIS opened an account at Broadway Bank in Chicago, Illinois, and deposited the $392,500 check as an initial deposit.

k. On or about April 29, 1996, defendant PETER BOUZANIS caused a debit in the amount of $357,600 to be made from his account at Broadway Bank, which debit BOUZANIS used to pay off the five-day, interest-free loan that he had obtained from the same bank on or about April 24, 1996.

In violation of Title 18, United States Code, Sections 371 and 2.

COUNT TWO

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 14 of Count One of this indictment are realleged and incorporated as though fully set forth here.

2. Beginning no later than in or around early March 1996, and continuing until at least in or around late April 1996, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS BLACK and
PETER BOUZANIS,

defendants herein, did knowingly devise and intend to devise a scheme to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, promises and omissions, which scheme is further described in paragraphs 1 through 14 of Count One of this indictment, as incorporated above by paragraph 1 of this count.

3. On or about April 24, 1996, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS BLACK and
PETER BOUZANIS,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did cause to be transmitted in interstate commerce from Newark, New Jersey, to Chicago, Illinois, by means of wire and radio communications, certain writings, signs, signals and sounds, namely a wire transfer in the amount of $1,250,000, which wire transfer was the disbursement of the loan

proceeds from The Money Store to defendant BOUZANIS to purchase The Waterfalls Restaurant;

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT THREE**

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1. The allegations of paragraphs 1 and 2 of Count Two of this indictment are realleged and incorporated as though fully set forth here.

2. On or about April 24, 1996, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS BLACK and
PETER BOUZANIS,

defendants herein, for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be deposited for delivery by an interstate carrier, a package addressed to Chicago Title and Trust Company (Lake County), 1505 White Oak Drive, Waukegan, Illinois 60085, to be sent and delivered by an interstate carrier, namely United Parcel Service, according to the directions thereon, which package contained, among other things, the special warranty deed and the mortgage for The Waterfalls Restaurant;

In violation of Title 18, United States Code, Sections 1341 and 2.

**COUNT FOUR**

The SPECIAL JULY 2000-2 GRAND JURY further charges:

On or about March 20, 1996, at Chicago, in the Northern District of Illinois, Eastern Division,

PETER BOUZANIS,

defendant herein, knowingly and willfully did make, and caused to be made, materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the United States Small Business Administration, an agency of the executive branch of the government of the United States, in that defendant PETER BOUZANIS executed a United States Small Business Administration Form 912 "Statement of Personal History" wherein he falsely represented, and caused to be represented that:

(1) he was a United States citizen;

(2) he was not under indictment; and

(3) he had never been charged with or arrested for any criminal offense other than a minor motor vehicle violation,

when in truth and fact, as defendant PETER BOUZANIS then and there well knew:

(1) he was not a United States citizen;

(2) he was then and there under indictment for the charge of felony theft in case number 95 CF 2644 in the Circuit Court of DuPage County, Illinois; and

(3) he had previously been arrested on multiple occasions for criminal offenses that were not minor motor vehicle violations;

In violation of Title 18, United States Code, Section 1001.

A TRUE BILL:

FOREPERSON

UNITED STATES ATTORNEY

00 CR 1065

UNITED STATES DISTRICT COURT

Northern District of Illinois

Eastern Division

THE UNITED STATES OF AMERICA

vs.

PETER BOUZANIS and
NICHOLAS BLACK

SUPERSEDING
INDICTMENT

Violation: Title 18, United States Code,
§§ 2, 371, 1001, 1341, and 1343

A true bill,

David L. Grosberg

Foreman

Filed in open court this APR 17 2001 day

of ______, A.D. 19 ____

MICHAEL W. DOBBINS

Clerk

Bail, $ ______

Sheila Moore, Deputy Clerk