# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 1065 - all | **DATE** | 5/24/2004 |
| **CASE TITLE** | USA vs. Bouzanis, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, the motions of defendants JACPG, Inc. [170-1], Marin [171-1], and Marin [169-1] are all denied. In-court ruling date of 5/26/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices: 5

MAY 25 2004 date docketed

date mailed notice: 5/24/2004

courtroom deputy's initials: MD

Document Number: 187

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | No. 00 CR 1065 |
| ) | Judge Joan H. Lefkow |
| PETER BOUZANIS, GEORGE PALIVOS, ) | |
| JACPG, INC., PETER PALIVOS and ) | |
| LOUIS MARIN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are post-trial motions by defendants JACPG, Inc. ("JACPG"), Louis Marin ("Marin") and Peter Palivos ("Palivos"), seeking either judgment of acquittal under Federal Rule of Criminal Procedure 29 or a new trial under Federal Rule of Criminal Procedure 33. JACPG was convicted at trial of four counts: (1) conspiracy to defraud an agency of the United States; (2) wire fraud; (3) mail fraud; and (4) knowingly making a false claim in a bankruptcy proceeding. Marin was convicted of assisting an individual in filing a false tax return. Palivos was acquitted of obstruction of justice but convicted of conspiracy to obstruct justice.[1] For the reasons set forth below, all of the defendants' motions are denied.

## STANDARDS

Under Rule 29, a motion for judgment of acquittal should be granted only where "the evidence is insufficient to sustain a conviction." As the Seventh Circuit has stated:

---

[1] Co-defendants Peter Bouzanis and George Palivos are fugitives and were not participants in the trial of JACPG, Marin and Peter Palivos.

> The appellant "faces a nearly insurmountable hurdle [because] . . . we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt."

*United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)).

Under Rule 33, a court may grant a new trial "if the interest of justice so requires." Once again, such motions are disfavored and are granted only in extreme cases. *E.g., United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). However, in deciding whether a new trial should be granted under Rule 33, the court "may properly consider the credibility of witnesses, and may grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999); *see also, United States v. Morales*, 902 F.2d 604, 608 (7th Cir. 1990) ("When, however, in a case in which a jury has convicted a person of a crime carrying a very long mandatory minimum penalty, the complete record, testimonial and physical, does not permit a *confident* conclusion that the defendant is guilty beyond a reasonable doubt, the district judge is obliged to grant a motion for a new trial) (emphasis in original), *modified by United States v. Morales*, 910 F.2d 467 (7th Cir. 1999).

## DISCUSSION

Disappointingly, despite vigorously advocating this case and being given at least one extension of time, the government has failed to file a response brief to any of the defendants' motions nor has it sought a further extension to do so. Accordingly, the court decides these motions based only on the briefs submitted. *See* Local Rule 78.3 ("Failure to file a supporting or

2

answering memorandum shall not be deemed to be a waiver of the motion or withdrawal of opposition thereto . . . .").

A. **JACPG and Marin**

Bearing in mind the standards set forth above under Rules 29 and 33, the motions of JACPG and Marin must be denied. Viewing the evidence in a light most favorable to the United States, there was sufficient evidence to support the convictions of both JACPG and Marin. Moreover, the court is not persuaded that under Rule 33 the interest of justice requires that either be afforded a new trial.

B. **Palivos**

The court explores some of the arguments raised in Palivos' motion in greater detail because the evidence convicting him was less substantial. The case against Palivos was centered, in large part, on the testimony of co-defendant turned government witness Nicholas Black.[2] In short, Black testified that, at the direction of Peter and George Palivos, he handwrote two notes placed in a file he tendered to a federal grand jury. The grand jury had requested the file pursuant to a subpoena.[3] Black testified that the notes were false insofar as he backdated them to sometime in 1996, even though he wrote the notes on either November 14 or 15, 2000. According to Black, the notes were an attempt to substantiate a fictitious purchase price dispute between the seller and buyer of the restaurant "Waterfalls" and an attempt to explain a payment of $25,000 to Peter Palivos from the proceeds of that transaction.

---

[2] On June 12, 2002, Black entered into a plea agreement with the United States in which he plead guilty to charges of conspiracy to defraud an agency of the United States and conspiracy to obstruct justice.

[3] The details concerning the underlying transaction and the notes have been examined by the court in greater detail in other opinions and will not be set forth again here. *See United States v. Bouzanis*, No. 00 C 1065, 2003 WL 22143275 (N.D. Ill. Sept. 13, 2003).

3

Black testified that he received the grand jury subpoena seeking his file on October 20, 2000. (Tr. Transcript at 45.) Thereafter, he testified that he spoke with both George and Peter Palivos on the same date. (*Id.*) Black further testified that he had another conversation with George and Peter "a couple of days" afterward. (*Id.*)

Black located his Waterfalls file on approximately November 1, 2000, at which time he contacted George Palivos. (Tr. Transcript at 78-79.) After this conversation, Black once again testified that a "couple of days" later he met with George and Peter at the Palivos law firm. (Tr. Transcript at 79.) Black testified to meeting with the Palivos brothers again "a few days later" or a week or so before he produced the Waterfalls file to the grand jury. (Tr. Transcript at 83-84.) Black tendered his Waterfalls file to the grand jury on November 15, 2000. (Tr. Transcript at 176.) After submitting his file, Black testified that he met with Peter Palivos and gave him a copy of what he gave to the grand jury. (Tr. Transcript at 94.) The parties stipulated that George Palivos was out of the country from November 3 to November 13, 2000.

1.  *Rule 29*

Palivos' motion for judgment of acquittal under Rule 29 must be denied. Viewing the evidence in a light most favorable to the government, there was a sufficient basis for Palivos' conviction. His argument otherwise focuses on two issues: (1) the fact that the two verdicts were inconsistent insofar as he was acquitted of obstruction of justice but convicted of conspiracy to do the same and (2) the incredible nature of Black's testimony, including the alleged impossibility of Black's version of certain events involving George Palivos.

Concerning argument (1), even if the court were to assume some inconsistency in the verdicts, the law is very clear that inconsistent verdicts do not give rise to a new trial or to a right

4

to judgment of acquittal on a related count. *See, e.g., United States v. Powell*, 469 U.S. 57, 69 (1984); *United States v. Mojica*, 185 F.3d 780, 789-90 (7th Cir. 1999); *United States v. Castillo*, 148 F.3d 770, 774-75 (7th Cir. 1998); *United States v. Sims*, 144 F.3d 1082, 1093-84 (7th Cir. 1998); *United States v. Scop*, 940 F.2d 1004, 1007-08 (7th Cir. 1991). As the Court stated in *Powell*, each count in an indictment must be treated as a separate indictment and simply because a defendant is acquitted on one count does not require acquittal on another. *Powell*, 469 U.S. at 62-63 (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)). Moreover, in reaffirming its ruling in *Dunn*, the Court explained,

> As the *Dunn* Court noted, where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn, supra*, at 393, 52 S.Ct. at 190. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts–even verdicts that acquit on a predicate offense–should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at the inconsistent conclusion on the lesser offense.

469 U.S. at 64-65. Accordingly, Palivos' argument on this ground must be rejected.

Palivos' second argument–that Black's testimony was inherently incredible so as to require judgment of acquittal–is also rejected. Generally, the issue of a witness' credibility is to be decided by the jury, not a judge. *E.g., United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Testimony is properly excluded as incredible as a matter of law only when a reasonable person could not have believed the proffered testimony, meaning, in essence, where "the testimony contradicts indisputable physical facts or laws." *Id.*

Palivos apparently means to argue that Black's testimony contradicts indisputable physical facts or laws because Black testified to meetings with George Palivos when George was in Greece. The court disagrees that Black's testimony was incredible as a matter of law or that only a "modicum" of evidence supports Palivos' conviction. Admittedly, Black did not recount the dates of his meeting with the Palivos brothers with laser precision but he was sufficiently able to place his conversations in a time frame. The testimony does not indisputably contradict the physical facts. A reasonable jury could have come to three different conclusions based on Black's testimony: (1) that Black met with the Palivos brothers the number of times he stated but did not meet with George Palivos from November 3 to November 13, 2000; (2) that Black met with the Palivos brothers the number of times he stated but that he was mistaken concerning his recollection of the dates; or (3) that Black was lying. The jury in this case was able to hear this evidence and must have decided either (1) or (2).[4] It was well within the jury's function to decide whether Black was being truthful. This is not grounds for usurping the jury's role in determining Black's credibility.

---

[4] The issue of the meetings with George Palivos was brought out on cross examination:

Q: Is the reason you don't remember the dates, sir, is because you now as you sit there have found out that George Palivos from November 3, November 13, was out of the country?
A: No.
Q: Well, if he were, then sir, your testimony isn't on target, is it?
***
Q: Your testimony is either a mistake or a lie if he couldn't have been at his office when you say he was, isn't that right?
A: If he wasn't there, then I didn't speak with him.
Q: An then you would have lied about having spoken to him?
A: No, I did not lie about having spoken to him.

(Tr. Transcript at 154.)

6

Accordingly, for all of the above reasons, Palivos' motion for judgment of acquittal under Rule 29 is denied.

2.  *Rule 33*

Palivos' argument for a new trial is similar to his arguments above but also contains several new claims. Palivos' overarching theory is that, in the interest of justice, a new trial should be afforded. In support of his claims, Palivos requests that the court hold an evidentiary hearing.

To the extent Palivos argues as above that the alleged inconsistent verdicts along with the incredible nature of Black's testimony should be enough for a new trial in the interest of justice, the court disagrees. The jury was in a position to decide Black's credibility and the court cannot say that the interest of justice requires a new trial. Certainly the jury would have been equally reasonable had it decided that Black's testimony was incredible, but the court sees no reason to disturb the decision made.

Palivos argues that Black's credibility can further be questioned based on certain affidavits he submits with his motion. These affidavits are from three people: Demetrios Kozonis, Peter Kopsaftis and Bobby Bozonelos. Although Palivos does not identify the affidavits as such, the court views this as newly discovered evidence. To receive a new trial based on newly discovered evidence Palivos must demonstrate that the evidence (1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000); *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir. 1992).

Concerning Kozonis' affidavit, most of this evidence was in fact brought out at trial. Kozonis avers in his affidavit that Black told him that Palivos "was not to blame for anything, and that Peter Palivos was not involved with anything." This exact exchange took place during Black's cross examination:

> Q: Have you told [Kozonis] that Peter Palivos had nothing to do with this?
> A: I did tell him that.
> Q: And that's the truth isn't it?
> A: With what part?

(Tr. Transcript at 185.) On redirect examination Black clarified that he told Kozonis that Palivos had nothing to do with the loan transaction and the ownership of the restaurant. (Tr. Transcript at 186-87.) Black specifically testified that he did not talk about Palivos in connection with the obstruction of justice charges. (*Id.*) Thus, Kozonis' affidavit in this respect adds nothing to Palivos' ground for a new trial. Moreover, concerning other portions of his affidavit, the court is not convinced that through due diligence Kozonis' testimony could not have been discovered sooner. Palivos' counsel was certainly aware that Kozonis' had information relating to this case and there was no impediment to his testifying at trial.

Moving on to the affidavits of Kopsaftis and Bozonelos, Palivos attempts to use each of the affidavits to prove witness tampering on the part of the government. Both Kopsaftis and Bozonelos stated in their affidavits that after being interviewed by the FBI, they were instructed to keep their interviews "confidential." Nothing in either affidavit suggests that the FBI discouraged either Kopsaftis or Bozonelos from testifying or from telling their story to Palivos. Keeping an interview confidential is distinct from encouraging a witness not to testify at trial.

8

The court does not view this as witness tampering and sees no reason to hold an evidentiary hearing on this ground.

Finally, Palivos argues that certain *Brady* violations have taken place based on the United States' actions. Palivos directs the court to two issues: (1) Black's failure to pay timely tax returns and (2) whether Black and/or his wife were under investigation for bank fraud in connection with certain dealings at Broadway Bank in Chicago. Concerning the failure to pay tax returns, the United States disclosed in a letter to each defense counsel that Black had "not filed income tax returns for the past six years although he has made certain quarterly payments." (Def. Supplemental Ex. 6.) Palivos' counsel now argues that either before or during Black's testimony, the Assistant United States Attorney prosecuting this case advised him that Black had only a "few years" of unfiled tax returns and that the letter was less-than-accurate. Thus, according to Palivos' counsel, the failure to file timely returns was only "briefly probed."

Palivos frames the issue as whether the original statement correctly portrayed Black's tax omissions or whether the verbal representations were correct. However, counsel could have explored this issue with Black himself and the court sees no reason why this issue need be examined now. Indeed, on direct examination Black testified as follows concerning his failure to file tax returns:

> Q: Mr. Black, in the last couple of years have you been delinquent in filing your tax returns?
> A: Yes.
> Q: And do you know how many years delinquent you are?
> A: Pardon me.
> Q: Do you know how many years delinquent you are?
> A: Right now? Three of four.
> Q: Do you–
> A: I paid my taxes. And the last three filings that I filed, I will get refunds back.

> Q: You're just behind in actually completing the paperwork?
> A: Yes.
> Q: And are you working with an accountant for that?
> A: Yes.

(Tr. Transcript at 118-119.) This issue apparently was not revisited on cross examination.

As for the argument concerning Black's dealings with Broadway Bank, Palivos' theory is essentially that Black may have been under government investigation in 2001 or 2002 and that, under threat of charges relating to these dealings, he may have fabricated testimony about Palivos. Palivos presents no evidence to support even an inference that such an investigation ever took place. Instead, he suggests that *maybe* there was a government investigation into Black and *maybe* such investigation caused Black to fabricate his testimony. While the court does not doubt that if such investigation existed it should have been disclosed, the court has been presented with no basis to show that the government had any ongoing bank or tax fraud investigation concerning Black that was not disclosed.[5] Palivos can point to no evidence which should have been disclosed as per *Brady*. As such, his argument on this ground is rejected.

## CONCLUSION

For the reasons stated above, the motions of JACPG [#170], Marin [#171] and Palivos [#169] are all denied.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 24, 2004

---

[5] Black's dealings with Broadway Bank were brought out during cross examination. (Tr. Transcript at 130-33.)

10